**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Roberta L. K. B.,[1]

Plaintiff,

v.

Frank Bisignano, Commissioner of Social Security,

Defendant.

Case No. 25-cv-2612 (JFD)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Roberta L. K. B. seeks judicial review of a final decision by the Defendant Commissioner of the Social Security Administration, denying Plaintiff's application for disability insurance benefits ("DIB"). The matter is before the Court on Plaintiff's Brief (Dkt. No. 17) and Defendant's Brief (Dkt. No. 22). Plaintiff argues that the Commissioner's final decision should be reversed because the administrative law judge ("ALJ") relied on unreliable testimony from a vocational expert ("VE") in finding that Plaintiff was not disabled. The Commissioner asks the Court to affirm the decision. For the reasons set forth below, the Court concludes that the ALJ did not err, and substantial evidence supports the ALJ's decision. The Court therefore affirms the decision.

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initials of nongovernmental parties in Social Security cases.

## I. Background

People with disabilities can qualify for financial support from the Social Security Administration ("SSA") through one or both of its assistance programs: the DIB Program under Title II of the Social Security Act and the SSI Program under Title XVI of the Act. *See Smith v. Berryhill*, 587 U.S. 471, 475 (2019). The DIB Program provides support to those who worked and had sufficient Social Security taxes withheld from their pay over their working life to qualify for coverage if they become disabled. *See id.*; 42 U.S.C. § 423(a) (guaranteeing benefits for insured disabled people). The SSI Program is a public assistance program that provides support to people with disabilities, whether or not they have paid Social Security taxes, and who demonstrate financial need. *See Smith*, 587 U.S. at 475; 42 U.S.C. § 1381a (guaranteeing support to eligible "aged, blind, or disabled" people); 20 C.F.R. § 416.110 (explaining program's purpose).

Plaintiff filed a DIB application on October 11, 2022. (*See* Soc. Sec. Admin. R. (hereinafter "R.") at 17.)[2] Her alleged impairments were back issues, chronic back pain, a back injury from a car accident in 2006, and arthritis. (R. 243.) Her DIB application was denied at both the initial and reconsideration stages of administrative review. (R. 64–79.) At Plaintiff's request, an administrative hearing was held before an ALJ on May 6, 2024. (*See* R. 35–63.) Plaintiff and VE David Perry, Ph.D., testified at the hearing. (R. 36.)

---

[2] The Social Security administrative record is filed at Dkt. No. 10. The record is consecutively paginated on the lower right corner of each page, and the Court's record citations are to those page numbers, not the page numbers assigned by CM/ECF or PACER.

Plaintiff was 53 years old on the hearing date. (R. 39.) Her formal education ended when she left high school in 10th or 11th grade. (R. 41.) Her past work experience included jobs as a home health aide and nurse assistant. (R. 58–59.) Plaintiff testified in relevant part that she used a cane to get in and out of cars and on long walks. (R. 41.) The weekend before the hearing, for example, Plaintiff brought her cane on a walk "for safety reasons just because if I start to hurt and I can't sit down anywhere because some of the walking trails don't have a place to sit so I use it . . . to hold on to and stand there so I can not fall over from the pain." (R. 50.) Walking and standing aggravated her back pain. (R. 48.) Plaintiff could stand and wash dishes for 5 to 10 minutes, prepare simple meals, do laundry, and crochet. (R. 48, 51–52.) She liked to camp, fish, hike, and go to craft shows and rummage sales, but was limited to 15 or 20 minutes before she needed to go sit in the car. (R. 53.)

For Dr. Perry's testimony, the ALJ asked him to assume a hypothetical individual with Plaintiff's age, education, and past work. (R. 59.) In addition, the hypothetical person would be limited to light work, but could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk up to 4 hours in an 8-hour workday; could sit for a maximum of 6 hours in an 8-hour workday; could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could not be exposed to unprotected heights or moving machinery; and would need to use a cane when walking. (R. 59–60.) Dr. Perry testified that the hypothetical person could work as a marking clerk, Dictionary of Occupational Titles ("DOT") 209.587-

034, of which there were 100,000 jobs nationally; routing clerk, DOT 222.687-022, of which there were 110,000 jobs nationally; or copy machine operator, DOT 207.685-014, of which there were 10,000 jobs nationally. (R. 60.)

Dr. Perry testified that his testimony was consistent with the DOT, except that the DOT did not address the use of a cane. (R. 61.) Therefore, the impact of the cane was based on his professional experience and training. (R. 61.) In addition, Dr. Perry explained that the marking-clerk job was performed in a "more modern way" than described in the DOT in that the tools used were scanners and handheld computers with automatic pricing functions. (R. 61.) The routing-clerk job was modernized by more automated features, and copy machines had also been modernized and made more efficient. (R. 61.)

Plaintiff's attorney asked Dr. Perry about the impact of using a cane while standing or walking on one's ability to use both upper extremities to handle and finger to complete tasks. (R. 62.) Dr. Perry responded that the person could use only one hand while standing or walking because the other would be using the cane. (R. 62.) The jobs identified by Dr. Perry, however, "do not require . . . handling or fingering with both hands so they could still be done in those same numbers." (R. 62.)

The ALJ issued a written decision on May 13, 2024, finding that Plaintiff was not disabled. (R. 14–29.) The ALJ followed the familiar five-step sequential analysis described

in 20 C.F.R. § 404.1520.[3] At each step, the ALJ considered whether Plaintiff was disabled based on the criteria of that step. If she was not, the ALJ proceeded to the next step.

The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since October 9, 2022. (R. 19.) At the second step, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine and obesity. (R. 19.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 22.)

Between steps three and four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), which is a measure of "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ assessed Plaintiff with the RFC:

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can lift and/or carry 20 pounds occasionally, 10 pounds frequently. She can stand and/or walk up to 4 hours in an 8-hour workday, and sit up to a maximum of 6 hours in an 8-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. She can occasionally balance as that term is defined in the Selected Characteristics of Occupations, and occasionally stoop, kneel, crouch, and crawl. She should not have exposure to unprotected heights or moving machinery. She would use a cane when walking.

[3] The five steps are "(1) whether claimant is engaged in substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether the impairment meets or equals the severity of a listed impairment, (4) whether claimant has the residual functional capacity to perform past relevant work activity, and (5) if claimant is unable to do past work, whether claimant can perform other work." *See Delph v. Astrue*, 538 F.3d 940, 946 (8th Cir. 2008) (citing *Smith v. Shalala*, 987 F.2d 1371, 1373 (8th Cir. 1993)).

(R. 22.) After the ALJ established Plaintiff's RFC, the ALJ proceeded to step four of the sequential evaluation and determined that Plaintiff could not perform her past relevant work. (R. 26.) The ALJ therefore continued to step five.

Because Plaintiff's limitations precluded her ability to perform the full range of light work, the ALJ relied on Dr. Perry's testimony to determine the extent to which Plaintiff's limitations eroded the unskilled, light occupational base. (R. 27.) The ALJ found that Dr. Perry's testimony was consistent with the DOT, except that the DOT did not address the use of a cane. (R. 28.) The ALJ noted that Dr. Perry based his testimony on that issue on his 40 years of experience. (R. 28.) The ALJ concluded that Plaintiff was capable of making a successful adjustment to other work and consequently was not disabled. (R. 28.) Plaintiff requested review by the Appeals Council, but her request was denied. (R. 1.)

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must "consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court

may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

"The claimant has the burden of proof to show she is disabled through step four; at step five, the burden shifts to the Commissioner to show there are other available jobs in the economy." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). To meet the definition of disability for DIB, the claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

## III. Discussion

Plaintiff argues that the ALJ did not resolve an inconsistency between the DOT and the VE's testimony concerning the hand-use requirements of the representative jobs. (Pl.'s Br. at 4.) Plaintiff contends that the VE's testimony concerning bilateral hand use while standing or walking is "patently unreasonable." (*Id.*)

Before January 6, 2025, Social Security Ruling ("SSR") 00-4p governed conflicts between occupational evidence from a VE and information in the DOT.[4] SSR 00-4p, 2000 WL 1898704, at *1 (SSA Dec. 4, 2000). The Ruling required ALJs to resolve any such conflicts before relying on the VE's testimony. *Id.* Although an ALJ must "rely primarily on the DOT . . . for information about the requirements of work in the national economy," the ALJ may also use evidence from a VE "to resolve complex vocational issues." *Id.* at *2.

Part of the ALJ's duty is to "inquire, on the record, as to whether or not there is . . . consistency" between the VE's testimony and the DOT. *Id.* "When there is an apparent unresolved conflict . . ., the adjudicator must elicit a reasonable explanation for the conflict before relying on" the VE's testimony. *Id.* The ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on" the VE's testimony rather than the DOT. *Id.* A reasonable explanation includes, for example, that the VE added to the information in the DOT information from the VE's experience. *Id.* The ALJ "will explain in the determination or decision how he or she resolved the conflict" between the VE evidence and the DOT. *Id.* at *4.

---

[4] SSRs are binding on all components of the SSA and "represent precedent[ial] final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.160(b)(1). SSR 00-4p was rescinded and replaced with SSR 24-3p, effective January 6, 2025. *See* SSR 24-3p, 89 Fed. Reg. 97158-01, 97159 (Dec. 6, 2024). Because the ALJ's decision was issued before January 6, 2025, the Court applies SSR 00-4p. *See id.* n.1 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). The parties agree that SSR 00-4p applies.

Here, the ALJ asked Dr. Perry on the record whether his testimony was consistent with the DOT. Dr. Perry replied that it was, with the exception of the use of a cane, which the DOT did not address. Dr. Perry stated that his answer accounted for that particular variable, based on his training and experience. In response to questions from Plaintiff's attorney, Dr. Perry explained that the representative jobs he identified did not require handling or fingering with both hands, so they could be performed when the individual was standing or walking and holding a cane. The Court is satisfied that the ALJ inquired on the record whether Dr. Perry's testimony was consistent with the DOT. The Court is also satisfied that, in response to questions from the ALJ and Plaintiff's attorney, Dr. Perry gave a reasonable explanation for the conflict: Dr. Perry based his testimony on his experience, which SSR 00-4p recognizes as reasonable.

In the written decision, the ALJ cited to SSR 00-4p and acknowledged her duty to resolve any conflict between VE evidence and the DOT. The ALJ found Dr. Perry's testimony consistent with the DOT, except that the DOT does not address the use of a cane. The ALJ observed that Dr. Perry's testimony on that issue was based on his 40 years of experience, thereby explaining the ALJ's resolution of the conflict.

Plaintiff does not take issue directly with the ALJ's compliance with SSR 00-4p. Rather, Plaintiff argues that Dr. Perry's testimony was "unreliable" because the Selected Characteristics of Occupations ("SCO") defines reaching as a bilateral activity, and the three jobs identified by Dr. Perry require reaching. (Pl.'s Br. at 7–8.) Plaintiff relies on the SCO's definition of "reaching" as "[e]xtending hand(s) and arm(s) in any direction."

*Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, App'x C (U.S. Dep't of Labor, 1993). However, the use of parentheses around the "s" after the words "hand" and "arm" ("hand(s) and arm(s)") indicates that bilateral use is optional. In other words, "reaching" may be with one hand or arm, or with both hands or arms. Reaching is not necessarily a bilateral activity under the SCO definition.

Plaintiff next argues that Dr. Perry's testimony was "implausible" because the jobs of marking clerk, routing clerk, and copy machine operator require handling or fingering with both hands. (Pl.'s Br. at 9.) To the contrary, none of the DOT definitions explicitly require bilateral handling or fingering. *See* Photocopying-machine Operator, DOT 207.685-014 (G.P.O. 4th ed, rev., 1991), 1991 WL 671745; Marker, DOT 209.587-034, 1991 WL 671802; Routing Clerk, DOT 222.687-022, 1991 WL 672133.

Plaintiff asks the Court to use "common sense" to find "there is simply no way of avoiding the bilateral nature" of the representative jobs. (Pl.'s Br. at 10.) The description of Marker, for example, includes attaching price tickets to articles of merchandise. *See* DOT 209.587-034, 1991 WL 671802. Plaintiff contends this task "plainly requires the worker to hold some sort of marking device in one hand, and the item to be marked in the other." (Pl's Br. at 10.) But the definition does not "plainly" require that. The item could be sitting on a shelf, pallet, or garment rack, for example. Moreover, Dr. Perry testified that the job has been modernized for the use of scanners and handheld computers. In addition, the description of the Marker job also includes tasks such as marking prices by hand on

boxes or tickets, pressing a lever on a mechanism that pastes or staples tickets to an item, recording the number and types of articles and packing them in boxes, comparing printed price tickets with purchase orders, and printing tickets on a ticket-printing machine. These tasks would not necessarily require bilateral handling or fingering.

The description of Routing Clerk involves tasks such as sorting items for delivery, reading route numbers, determining locations of addresses, and placing articles in bins. *See* DOT 222.687-022, 1991 WL 672133. Plaintiff asserts that the idea that a person "never needs to carry anything, or hold something with one hand while performing some task regarding the object with the other, strains credulity." (Pl.'s Br. at 12.) Dr. Perry testified that a worker could perform the Routing Clerk job and use a cane while walking, however, and that the job has become more automated since the DOT was published. In addition, the suggestion that Plaintiff could "never" carry anything or hold something with one hand while doing a task with the other is not supported by the record. And the hypothetical question posed to Dr. Perry and the RFC assessed by the ALJ included the use of a cane only while walking.

The job of Photocopying-machine Operator requires a worker to tend to a duplicating machine, place original copies on a glass plate, place blank paper in the loading tray, program the number of copies, and press a button to start the machine. DOT 207.685-014, 1991 WL 671745. Plaintiff submits that to conclude that this job "does not require[] both upper extremities to carry or manipulate objects offends common sense and experience." (Pl.'s Br. at 13.) The job description itself does not require bilateral handling

or fingering, however, nor do the listed tasks obviously require bilateral extremity use while walking. Furthermore, Dr. Perry testified that in his experience, the copy machine operator job could be performed by someone who used a cane while walking.

There are two final matters to address. First, Plaintiff posits that if the Court were to reverse the Commissioner's final decision and remand the matter to the SSA, the ALJ would apply SSR 24-3p, not SSR 00-4p, to the VE evidence. (Pl.'s Br. at 10–11.) The Court will not engage in guesswork about what an ALJ might determine about potentially different evidence in a future administrative proceeding under a different SSR.

Second, Plaintiff has filed three exhibits containing Occupational Requirements Survey data to rebut the VE's evidence. (Pl.'s Exs., Dkt. No. 18.) That data was not submitted to the ALJ or to the Appeals Council. To submit evidence for the first time to this Court, Plaintiff must show it is "material *and* that there is 'good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Mackey v. Shalala*, 47 F.3d 951, 952 (8th Cir. 1995) (quoting 42 U.S.C. § 405(g)) (emphasis in original). Plaintiff has neither acknowledged nor made this showing, and thus, the Court did not consider the data in the proffered exhibits.

## IV. Conclusion

The VE's testimony constituted substantial evidence that supported the ALJ's finding at step five that Plaintiff could perform a significant number of jobs in the national economy, and the ALJ did not commit a legal error by relying on the VE's testimony.

Accordingly, based on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. The relief requested in Plaintiff's Brief (Dkt. No. 17) is **DENIED**;
2. The relief requested in Defendant's Brief (Dkt. No. 22) is **GRANTED**; and
3. The Commissioner's final decision is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: September 21, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge